IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CESAR ANTONIO GALEAS ARIAS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. JRR-25-3122 |
| GOODLEAP, LLC, et al., | * | |
| Defendants. | * | |

***

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant GoodLeap, LLC's ("GoodLeap") Motion to Dismiss and Compel Arbitration (ECF No. 17). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons set forth below, the Court will deny the Motion.

## I. BACKGROUND

### A. Factual Background

Plaintiff Cesar Antonio Galeas Arias is a government contractor who owns a home in Fort Washington, Maryland. (Compl. ¶¶ 1, 10, ECF No. 7). He currently lives in Okinawa, Japan, and his mother, Erlinda Garcia, lives at his home in Fort Washington. (Id. ¶ 10; Pl.'s Mem. Opp'n GoodLeap's Mot. Dismiss & Compel Arbitration ["Opp'n"] at 1, ECF No. 24). Defendant GoodLeap is a California-based company that "provides loans for energy efficient home improvement projects across the United States." (Mellott Decl. ¶ 3, ECF No. 17-2).

In April or May 2022, while Arias was living in Japan, a GoodLeap sales agent visited Arias's Fort Washington home and spoke with Garcia about installing solar panels on the home. (Compl. ¶ 14). Garcia explained that she did not own the home and, therefore, could not contract to have solar panels installed there. (Id.). She also explained that she had no income and would not qualify for financing to have the solar panels installed in any event. (Id.). Arias alleges that despite Garcia's explanation and Arias's absence, GoodLeap forged his and Garcia's signatures on applications and loan documents to have solar panels installed on his Fort Washington home. (Id. ¶ 15).

On April 28, 2022, GoodLeap emailed Garcia, requesting proof that she owned the Fort Washington home. (Id. ¶ 18). An email address that Arias believes is associated with a GoodLeap sales agent was copied to the email. (Id.). Garcia did not provide the requested documentation. (Id. ¶ 19). Nevertheless, GoodLeap "processed the loan documents and listed [Arias] as the primary borrower," without Arias or Garcia's knowledge or consent. (Id. ¶ 20). GoodLeap had the solar panels installed on Arias's Fort Washington home in 2022, and on August 23, 2022, GoodLeap filed a financing statement in Prince George's County's land records that secured the solar panels as collateral and listed Arias and Garcia as debtors. (Id. ¶¶ 21–22).

Arias alleges that he first learned about GoodLeap in February 2024, when he applied for a loan and multiple lenders told him that "his debt-to-income ratio was excessively high." (Id. ¶ 16). This is when he discovered that he had been listed as the borrower for a $75,683.93 loan with GoodLeap and that GoodLeap had allegedly "obtained [his] personal identifiable information without his knowledge or consent, for the

impermissible purpose of applying for credit for the GoodLeap loan." (Id. ¶¶ 16–17). On February 1, 2024, he texted the GoodLeap sales agent, accusing him of fraud and threatening to sue if GoodLeap did not "release [him] from any financial responsibility" over the allegedly fraudulent loan. (Id. ¶ 23). The sales agent denied any allegations of fraud and stated that he would "request[] more information from the company." (Id. ¶ 24). Arias responded, explaining that he was not present when the sales agent visited his home, that he was not consulted about the solar panel contract or installation, that he did not consent to co-signing any contract, and that Garcia did not consent to anyone using Arias's information for any such purpose. (Id. ¶ 25). The sales agent replied: "[I]t's not in my hands. I am not the financier. Call GoodLeap . . . they are the financier." (Id. ¶ 26). Arias contacted GoodLeap to report the alleged fraud but "received no meaningful response." (Id. ¶ 28).

On January 15, 2025, Arias submitted a credit dispute to Defendant Experian Information Solutions, Inc. ("Experian"), explaining that the GoodLeap loan agreement (the "Loan Agreement") was fraudulent. (Id. ¶ 46). He also provided documentation showing that he was living in Japan at the time that the Loan Agreement allegedly was executed. (Id.). Experian transmitted Arias's dispute and documents to GoodLeap. (Id. ¶ 47). Then, on February 28, 2025, Experian notified Arias that GoodLeap had certified that the information on Arias's account was correct, that the account would remain on his credit report, and that he should contact GoodLeap directly. (Id. ¶ 48).

On March 5, 2025, Arias submitted credit disputes to Defendants TransUnion, LLC ("TransUnion") and Equifax Information Services, LLC ("Equifax"), "again disputing the

validity of the GoodLeap account." (Id. ¶ 49). He provided documentation showing that he was living in Japan at the time, "a copy of the disputed DocuSign contract showing identical signature IDs for both him and his mother, and a confirmation from DocuSign indicating that each signer should possess a unique signature ID." (Id.). TransUnion and Equifax transmitted Arias's disputes to GoodLeap. (Id. ¶ 50). Equifax and TransUnion notified Arias on April 2, and April 9, 2025, respectively, that they verified his account and made no changes to the information that he disputed. (Id. ¶¶ 52–53).

On April 22, 2025, Arias submitted another credit dispute to Experian. (Id. ¶ 54). He included a Federal Trade Commission ("FTC") Identity Theft Report and other documentation. (Id.). Arias also submitted a "direct written dispute" to GoodLeap that same day. (Id. ¶ 55). He attached the Identity Theft Report, reiterated that he did not sign or authorize the Loan Agreement, and "demanded that GoodLeap remove his name from the account and immediately notify all consumer reporting agencies of the fraudulent nature of the account." (Id.). Arias states that his efforts to remove the GoodLeap loan from his credit reports "have been unsuccessful" and that he has suffered economic and emotional distress as a result of GoodLeap's allegedly fraudulent conduct. (Id. ¶¶ 29–31).

**B. Procedural Background**

On August 12, 2025, Arias filed a Complaint against GoodLeap, Trans Union, Experian, and Equifax in the Circuit Court for Prince George's County, Maryland, alleging violations of state and federal credit reporting and consumer protection laws. (Id. at 1, 14–37). As to GoodLeap, specifically, Arias alleges violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq. (Counts I and II); the Maryland Consumer Protection Act,

Md. Code Ann., Com. Law §§ 13-101, et seq. (Count III); the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law §§ 14-201, et seq. (Count VI); the Truth in Lending Act, 15 U.S.C. §§ 1601, et seq. (Count V); and the Maryland Door-to-Door Sales Act, Md. Code Ann., Com. Law §§ 14-301, et seq. (Count VI). (Compl. ¶¶ 56–142). He also seeks declaratory judgment under the Maryland Declaratory Judgment Act, Md. Code Ann. Cts. & Jud. Proc. § 3-403. (Compl. ¶¶ 143–47).

Experian removed the case to this Court on September 19, 2025, on the basis of federal question jurisdiction. (Notice Removal at 2, ECF No. 1). Trans Union and Experian filed Answers to the Complaint on September 26, 2025, (ECF Nos. 12–13), and Equifax filed an Answer on September 29, 2025, (ECF No. 16). Trans Union and Equifax have since been terminated as Defendants in this action. (See ECF Nos. 33–35). GoodLeap filed the instant Motion to Dismiss and to Compel Arbitration on September 29, 2025. (ECF No. 17). Arias filed an Opposition to the Motion on October 14, 2025, (ECF No. 24), and GoodLeap filed a Reply on October 29, 2025, (ECF No. 32).

## II. DISCUSSION

### A. Standard of Review

"[M]otions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." PC Constr. Co. v. City of Salisbury, 871 F.Supp.2d 475, 477 (D.Md. 2012) (quoting Shaffer v. ACS Gov't Servs., Inc., 321 F.Supp.2d 682, 683 (D.Md. 2004)). This Court typically evaluates motions to dismiss premised on arbitration agreements under Federal Rule of Civil Procedure 12(b)(3), which governs improper venue. See, e.g., Stone v. Wells Fargo Bank, N.A., 361 F.Supp.3d 539,

548–49 (D.Md. 2019); In re Titanium Dioxide Antitrust Litig., 962 F.Supp.2d 840, 856–57 (D.Md. 2013). The Court will treat a motion to compel arbitration as a motion for summary judgment, however, when "the formation or validity of the arbitration agreement is in dispute," Caire v. Conifer Value Based Care, LLC, 982 F.Supp.2d 582, 589 (D.Md. 2013), or when the court must consider documents outside the pleadings "to effectively assess the merits of [the] motion," Shaffer, 321 F.Supp.2d at 683–84; accord PC Constr. Co., 871 F.Supp.2d at 477 ("Whether the motion [to compel arbitration] should be treated as a motion to dismiss or a motion for summary judgment turns on whether the court must consider documents outside the pleadings."); see also Galloway v. Santander Consumer USA, Inc., 819 F.3d 79, 85, 85 n.3 (4th Cir. 2016) (stating that under the Federal Arbitration Act, a party seeking a jury trial "must show genuine issues of material fact regarding the existence of an agreement to arbitrate," a standard that is "akin to the burden on summary judgment" (quoting Chorley Enters. v. Dickey's Barbecue Rests., 807 F.3d 553, 564 (4th Cir. 2015))). Here, the Court will apply the summary judgment standard because Arias disputes the formation and validity of the arbitration agreement, (see Opp'n at 3–4, 8–11), and because resolving this dispute requires consideration of materials beyond the pleadings, (see generally Mellott Decl.; Loan Agreement, ECF No. 17-3).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. See Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the

movant demonstrates, through "particular parts of materials in the record," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). A party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is a genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. LLC v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof,

"there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (quoting Anderson, 477 U.S. at 250).

**B. Analysis**

GoodLeap has moved to compel arbitration based on the following arbitration provision in the Loan Agreement:

> All claims and disputes arising out of or relating to this Agreement (hereafter, "Dispute(s)") shall be resolved by binding arbitration on an individual basis. The arbitrator shall also decide any issues relating to the making, validity, enforcement, or scope of this arbitration agreement, arbitrability, defenses to arbitration including unconscionability, or the validity of the jury trial, class action or representative action waivers (collectively, "arbitrability" issues). YOU HEREBY WAIVE ANY CONSTITUTIONAL AND STATUTORY RIGHTS TO GO TO COURT AND HAVE A TRIAL IN FRONT OF A JURY. FURTHER, UNLESS YOU OPT OUT OF ARBITRATION, YOU ALSO AGREE TO WAIVE ANY RIGHT TO BRING OR PARTICIPATE IN A CLASS OR REPRESENTATIVE ACTION IN COURT OR IN ARBITRATION.

(Loan Agreement § 15; Mem. L. Supp. GoodLeap's Mot. Dismiss & Compel Arbitration ["Mot. Compel"] at 9–12, ECF No. 17-1). To prevail on a motion to compel arbitration, a party must show the existence of (1) a dispute between the parties; (2) a written arbitration provision that purports to cover the dispute; (3) a relationship between the transaction and interstate or foreign commerce; and (4) the failure of a party to arbitrate the dispute. Adkins v. Lab. Ready, Inc., 303 F.3d 496, 500–01 (4th Cir. 2002) (quoting Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)).

Here, it is clear from the pleadings that a dispute exists between the parties and that Arias has opted to file suit rather than participate in arbitration. (See generally Compl.; Mot. Compel; Opp'n). Additionally, Arias does not dispute that the Loan Agreement involved interstate commerce because "GoodLeap, based in California, lent money to [Arias], who lives in Maryland, for the purchase and installation of the solar panel system." (Mot. Compel at 9). The dispute, therefore, lies in whether there is a written arbitration provision that purports to cover the dispute. See Adkins, 303 F.3d at 500–01. GoodLeap argues that Arias consented to the arbitration provision by signing the Loan Agreement and making thirty-six payments against the loan. (Mot. Compel at 12 (citing Mellott Decl. ¶ 20)). Arias contends that the arbitration provision is unenforceable because his signature on the Loan Agreement was forged and he never agreed to be bound by the arbitration provision, or any provision of the Loan Agreement, for that matter. (Opp'n at 3–4). For the reasons discussed below, the Court finds that a genuine dispute of material fact exists as to whether Arias signed the Loan Agreement and, thus, will deny GoodLeap's Motion to Dismiss and Compel Arbitration.

**1. Enforceability**

The Federal Arbitration Act, 9 U.S.C. §§ 1, et seq., "reflects 'a liberal federal policy favoring arbitration agreements.'" Adkins, 303 F.3d at 500 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, (1983)). It provides that arbitration clauses are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. "Generally, however, courts may not compel parties to submit to arbitration any dispute they did not agree to arbitrate."

Kirkwood v. Fin. W. Inv. Grp., Inc., No. CCB-17-2005, 2019 WL 399012, at *2 (D.Md. Jan. 31, 2019) (citing Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416 (4th Cir. 2000)). While parties may agree to arbitrate issues of arbitrability, such as whether the subject agreement is enforceable, see Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 68–69 (2010), a claim of forgery—i.e., that a party "never entered into the contract containing an arbitration clause in the first place"—is one "for the Court to resolve prior to staying an action pending arbitration," Monk v. Perdue Farms Inc., 12 F.Supp.2d 508, 509 (D.Md. 1998); see also Kirkwood, 2019 WL 399012, at *3 ("[W]hen a party reasonably claims that it never signed the agreement containing the arbitration clause, the court, not an arbitrator, must determine if the party is bound by it." (quoting Gregory v. Interstate/Johnson Lane Corp., 188 F.3d 501 (4th Cir. 1999) (per curiam) (Table))). Thus, contrary to GoodLeap's assertion, (see Mot. Compel at 10–11), the Court, not an arbitrator, will determine whether the arbitration clause at issue here is enforceable, see Monk, 12 F.Supp.2d at 509.

GoodLeap argues that the Loan Agreement and its arbitration provision are enforceable because Arias "demonstrated express and implied consent [to the] Arbitration Provision [when] he (i) electronically signed the Loan [Agreement], and (ii) made 36 Loan payments totaling $8,504.68." (Mot. Compel at 12 (citing Mellott Decl. ¶ 20)). In support of its argument, GoodLeap provides: (1) the Declaration of GoodLeap's Vice President, Deputy of Compliance, Maria Mellott; (2) the Loan Agreement; (3) a Certificate of Completion showing that Arias and Garcia signed the Loan Agreement using the same email and that the Loan Agreement was emailed to Arias; (4) geolocation data showing

that the Loan Agreement was signed at Arias's Fort Washington home on April 29, 2022; (5) GoodLeap's records of Arias's loan payment history; and (6) a copy of an email from Garcia with a document attached indicating that she was Arias's attorney-in-fact. (Mellott Decl. ¶ 1, 10–22; see also ECF Nos. 17-3–17-6; ECF No. 18-1). These documents support GoodLeap's contention that Arias signed the Loan Agreement and consented to arbitrate "[a]ll claims and disputes arising out of or relating to [the Loan] Agreement . . . ." (Loan Agreement § 15).

Arias, on the other hand, provides documentation that contradicts GoodLeap's materials: (1) Arias's Declaration that he "never signed any contract or loan agreement with GoodLeap," that his signature on the Loan Agreement is forged, that he never negotiated a loan agreement with GoodLeap or communicated with GoodLeap prior to his discovering the forgery in February 2024, that he has never made any payments to GoodLeap, and that he does not have a Navy Federal Credit Union account ending in 1780 as shown on the Loan Agreement's Monthly Payment Authorization Document, (Arias Decl. ¶¶ 2–15, ECF No. 24-1; Loan Agreement at 20; Compl. ¶ 16); (2) the FTC Identity Theft Report that he filed on April 20, 2025, (ECF No. 24-2); (3) his bank statements from April 21, 2022 to May 20, 2022, which list the last four digits of his bank accounts and the purchases that he made in Japan during that time period, (ECF. No. 24-3); and (4) the Declaration of his attorney, Derek Hills, accompanied by a copy of the Loan Agreement bearing only Garcia's signature, which Hills received from defense counsel on September 12, 2025, (ECF Nos. 24-4–24-5; Opp'n at 9).

The Court finds that Arias's supporting documentation is sufficient to create a genuine dispute as to whether he signed the Loan Agreement and, in turn, whether he consented to arbitration. See, e.g., Hudson v. Babilonia, No. 3:14-cv-01646 (MPS), 2015 WL 1780879, at *2 (D.Conn. Apr. 20, 2015) (denying motion to compel arbitration where plaintiff provided sworn declaration "rais[ing] genuine disputes of material fact as to whether an arbitration agreement between [plaintiff] and the . . . defendants was ever formed"); Brooks v. Robert Larson Auto. Grp., Inc., No. C09-5016 FDB, 2009 WL 2853452, at *4 (W.D.Wash. Sep. 1, 2009) (reserving ruling on motion to compel arbitration pending jury trial on question of forgery where plaintiff provided sworn statement that signature on arbitration agreement was not hers); Kiser v. Truist Fin. Corp., 796 F.Supp.3d 207, 226–30 (E.D.Va. 2025) (finding genuine dispute of material fact as to whether plaintiffs signed the account signature cards or received the account agreement that contained the relevant arbitration provision where plaintiffs provided sworn testimony that the signatures on the cards were not theirs and that they had never seen the rules and regulations for the account), aff'd, 827 F.Supp.3d 718 (E.D.Va. 2026).

GoodLeap asserts that there can be no genuine dispute of material fact because Arias has not alleged sufficient facts to satisfy the elements of a forgery claim or to show the existence of an agency relationship such that GoodLeap could be held liable for its sales representative's allegedly fraudulent actions. (Reply Mem. L. Supp. GoodLeap's Mot. Compel Arbitration ["Reply"] at 3–4, ECF No. 32). In support of this argument, GoodLeap turns to Migliore v. Vision Solar, LLC, 158 F.4th 514 (2025), wherein the U.S. Court of Appeals for the Third Circuit granted the defendant-company's Rule 12(b)(6) motion to

dismiss the plaintiff's complaint partly because the plaintiff failed to allege sufficient facts showing an agency relationship between the defendant-company and the sale representative who allegedly forged the plaintiff's signature on various documents, id. at 521–25; (Reply at 3–4). GoodLeap's reliance on Migliore, however, is misplaced. The question before the court in Migliore was whether the plaintiff alleged sufficient facts—including facts that demonstrated an agency relationship between the defendant-company and the sales representative—to state claims for relief under the New Jersey Consumer Fraud Act and the Fair Credit Reporting Act. 158 F.4th at 520–21. The narrow question before this Court, on the other hand, is whether a factual dispute exists to preclude the Court from compelling Arias to arbitrate his claims against GoodLeap. (See Section II.A. of this Opinion). As stated above, the Court answers that question in the affirmative.

At bottom, Arias has demonstrated the existence of a genuine dispute of material fact such that he "is entitled to a separate trial to determine whether [he] signed the arbitration agreement pursuant to 9 U.S.C. § 4," before the Court reaches the merits of the case. Brooks, 2009 WL 2853452, at *4; see also 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."); Hudson, 2015 WL 1780879, at *3 (finding genuine dispute as to whether arbitration agreement was formed, and scheduling conference "to discuss the scheduling of discovery and trial on the issue of whether an agreement to arbitrate was formed").

**2. Equitable Estoppel**

GoodLeap also argues that, even if Arias did not sign the Loan Agreement, he is equitably estopped from repudiating it and its arbitration provision because he "derived a

benefit from the Loan" in the form of "the funds he needed to purchase and install the solar panel system at his residence." (Mot. Compel at 13). As explained below, the Court disagrees and finds that the doctrine of equitable estoppel cannot compel arbitration on the facts of this case.

"In the arbitration context, . . . a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." Int'l Paper Co., 206 F.3d at 418. For instance, "a plaintiff cannot deny that he is bound by an arbitration agreement" due to a lack of signature "when his claims against the defendant 'arise from the contract containing the arbitration clause.'" Kirkwood v. Fin. W. Inv. Grp., Inc., No. CCB-17-2005, 2019 WL 4879327, at *3 (D.Md. Oct. 3, 2019) (finding plaintiff was "equitably estopped from claiming his signature is a forgery" as a means of avoiding arbitration when plaintiff's "claims against [defendant] arise from the contractual relationship established by the" contract that contained the arbitration clause), aff'd, 814 F.App'x 785 (4th Cir. 2020). A party also may be equitably estopped from repudiating an arbitration provision when they knew about the arbitration provision and "knowingly accepted the benefits" of the contract containing the arbitration provision without objection. Int'l Paper Co., 206 F.3d at 418 (quoting Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S., 9 F.3d 1060, 1064 (2d Cir. 1993)).

In this case, Arias does not seek to benefit from other provisions of the Loan Agreement while simultaneously arguing that his signature was forged and that he cannot be bound by the Loan Agreement's arbitration provision. Unlike the plaintiff in Kirkwood,

who claimed that the defendant "breached its fiduciary duty" to the plaintiff, "breached its contractual agreements with him," and "breached a supervisory obligation" that it owed to him, 2019 WL 4879327, at *3 n.4 (citation modified), Arias does not seek to hold GoodLeap liable for any obligations or duties assigned to it under the Loan Agreement, (see Opp'n at 11). Arias maintains that he never signed any agreement with GoodLeap, (id.), and he seeks to hold GoodLeap liable for alleged violations of credit reporting and consumer protection laws, not to receive any benefit owed to him under the Loan Agreement, (see Compl. ¶¶ 56–147). Additionally, unlike the plaintiff in Deloitte Noraudit A/S, who received a copy of the agreement, "did not object thereafter," and then "knowingly accepted the benefits of the agreement," 9 F.3d at 1064, Arias alleges that he did not know about the Loan Agreement, let alone the arbitration provision, until years after the alleged execution of the Loan Agreement, and that he objected to the Loan Agreement in its entirety as soon as he became aware of it, (see Compl. ¶¶ 16–28). Thus, he did not "knowingly accept[] the benefits of the" Loan Agreement. Deloitte Noraudit A/S, 9 F.3d at 1064 (emphasis added). The doctrine of equitable estoppel, therefore, cannot compel arbitration in this case.

## III. CONCLUSION

For the foregoing reasons, the Court will deny GoodLeap's Motion to Dismiss and Compel Arbitration (ECF No. 17) without prejudice. A separate Order follows.

Entered this 11th day of August, 2026.

/s/
George L. Russell, III
Chief United States District Judge